1

2

3

4

5

6

7

8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 WILLIAM ROUSER,                                   No.  2:22-CV-1749-DAD-DMC-P

12                 Plaintiff,

13        v.                                         <u>ORDER</u>

14 PATRICK COVELLO, et al.,

15                 Defendants.

16

17            Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18 42 U.S.C. § 1983.  Pending before the Court is Plaintiff's complaint. <u>See</u> ECF No. 1.

19            The Court is required to screen complaints brought by prisoners seeking relief

20 against a governmental entity or officer or employee of a governmental entity.  <u>See</u> 28 U.S.C.

21 § 1915A(a).  This provision also applies if the plaintiff was incarcerated at the time the action was

22 initiated even if the litigant was subsequently released from custody.  <u>See</u> <u>Olivas v. Nevada ex rel.</u>

23 <u>Dep't of Corr.</u>, 856 F.3d 1281, 1282 (9th Cir. 2017).  The Court must dismiss a complaint or

24 portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can

25 be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  <u>See</u>

26 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that

27 complaints contain a ". . . short and plain statement of the claim showing that the pleader is

28 entitled to relief." Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply,

concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges the events outlined in his complaint occurred at Mule Creek State Prison (MCSP).  See ECF No. 1, pg. 1.  Plaintiff names the following as defendants: (1) Patrick Covello, the Warden; (2) B. Holmes, the Chief Deputy Warden; (3) K. Rogers, the B. Facility Captain; (4) Alvis, the Assignment Lieutenant; (5) Candace Clevenger, the Principal; (6) Davis, the Vice Principal; (7) John Doe, the Welding Supervisor; (8) T. Kirby, the Correctional Sergeant; (9) F. Carrillo, a chaplain; (10) Pendleton, a correctional officer; (11) Ramos, a correctional officer; (12) Miller, a correctional officer; (13) John Doe, a kitchen officer; (14) John Doe, a yard crew officer; (15) Silinovich, a correctional officer.[1]  See id. at 1-3. Plaintiff alleges that all Defendants are employed at MCSP.[2]  See id. at 2-3. Plaintiff alleges three claims for relief.

/ / /

/ / /

/ / /

/ / /

---

[1]     Plaintiff refers to Defendant F. Carrillo as both a Chaplain and a Deacon in his Complaint. For consistency purposes, the court will refer to Defendant F. Carrillo as a Chaplain.

[2]     If a complaint does not expressly state whether a defendant is being sued in their individual capacities, rather than their official capacities, a court may construe a demand for damages under § 1983 as a plaintiff's intention to sue a defendant in his individual capacity. See Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1990). Given that Plaintiff has asked for only damages and has listed fifteen individual defendants, the Court will presume that Plaintiff means to proceed only on a theory of individual liability.

2546fb93e5b4667b

1    <u>Claim 1</u>

2         Plaintiff states the Parole Board required him to get a vocation and GED and he

3    has been denied the ability to work, to get a vocational trade, or to get a GED. <u>See</u> <u>id.</u> at 5-6.

4    Plaintiff alleges this is part of a criminal conspiracy[3] amongst Defendant Alvis; Defendant

5    Candace Clevenger; Defendant Davis; Defendant F. Carrillo; Defendant John Doe, the welding

6    supervisor; Defendant John Doe, the kitchen officer; Defendant John Doe, the yard crew officer;

7    Defendant K. Rogers; Defendant Pendleton; Defendant Miller; Defendant Ramos; and Defendant

8    Kirby to retaliate against Plaintiff for filing grievances. <u>See</u> <u>id.</u> at 5.

9         Plaintiff adds that he met with Defendant Miller who informed Plaintiff that

10   Defendant Miller had been told by Defendant Pendleton that Plaintiff could not get a job because

11   he is an Inmate Advisory Committee member who has filed multiple grievances. <u>See</u> <u>id.</u> Plaintiff

12   states that upon asking Defendant Pendleton about this, she informed Plaintiff that she had a

13   meeting with the Lieutenant who showed her numerous grievances that Plaintiff had filed and

14   told Defendant Pendleton that Plaintiff could not get a job. <u>See</u> <u>id.</u>[4]

15        Next, Plaintiff claims that he had a meeting with Defendant Rogers who had the

16   Inmate Advisory Committee Chairman Chavez, Lieutenant Banks, and Defendant Kirby present.

17   <u>See</u> <u>id.</u> Plaintiff states that this meeting was held because Plaintiff told Defendant Rogers that he

18   would get the State Auditor and Attorney General involved if Defendant Rogers did not stop

19   "stealing our recyclable cans, which was robbing inmates' welfare." <u>See</u> <u>id.</u> at 5-6. Plaintiff also

20   states that he told Defendant Rogers that there was a conspiracy to deny Plaintiff the ability to

21   work or get a GED, as Plaintiff had been on the workers waiting list, education waiting list, and

22   vocational waiting list for over a year. <u>See</u> <u>id.</u> at 6. Plaintiff alleges that he told Defendant Rogers

23   _____

24        [3]    Criminal conspiracy is a state law claim not cognizable under § 1983. <u>See</u> <u>Sanders</u>
     <u>v. JD Home Rentals</u>, No. 122CV00251DADSKO, 2022 WL 2067904, at *6 (E.D. Cal. June 8,
25   2022). As no facts allege this to be a criminal conspiracy, the Court declines to consider this
     further.
26        [4]    From Plaintiff's complaint it is unclear whether it was Defendant Alvis, the
     Assignment Lieutenant, or another Lieutenant who had told Defendant Pendleton that Plaintiff
27   could not get a job. This is because the complaint states only that it was "The Lt." <u>See</u> ECF No. 1,
     pg. 5. Defendant Alvis is the only Lieutenant listed as a defendant, but Lieutenant Banks is
28   mentioned later in the allegations.

that while he was on these waiting lists other people "were coming here one week and assigned the next." See id. Plaintiff adds that he also told Defendant Rogers about his conversation with Defendant Pendleton who told Plaintiff he was unable to get a job because he had filed grievances. See id.

Plaintiff alleges that Defendant Rogers told Plaintiff that this was not true and told Defendant Kirby to get Plaintiff a job, preferably on recycling so that Plaintiff can watch the cans. See id. Plaintiff states that after eighteen months he has still not been given an assignment, which has made him unable to go home, due to the Parole Board requirement that he get a vocation and GED. See id. Plaintiff also states that he "is on 50% credit but can't [qualify to receive this credit and have his time reduced] without a job." See id.

Plaintiff alleges that "Defendant Covello was made aware of this through 22 Forms and grievances and failed to do anything, allowing [Plaintiff] to continue suffering irreparable harm." See id. Plaintiff adds that he "even filed a Writ of Habeus and Defendant Covello refused to remedy the problem." See id.

Claim II

In his second claim, Plaintiff states that on July 17, 2022, an incident took place between Plaintiff and a correctional officer. See id. at 7. After washing his hands, Plaintiff went to the officer station and got a paper towel, as he had done for over a year. See id. Plaintiff claims that Defendant Pendleton "said something," which Plaintiff replied to by saying that he thought the paper towels were for the inmates because everyone uses them. See id. According to Plaintiff, Defendant Silinovich then interjected saying "inmates get nothing." See id. Plaintiff alleges that when he tried to respond he was interrupted by Defendant Silinovich telling him to, "shut up and step the fuck off." See id.  Plaintiff adds that he asked what Defendant Silinovich said and Defendant Silinovich repeated aggressively "I said, shut up and step the fuck off." See id. Plaintiff alleges that he then asked what the Defendant's name was, and he said, "Silinovich. Now shut up and step the fuck off." See id.  Plaintiff states that he then looked at Defendant Ramos and Defendant Pendleton who said nothing. See id.

/ / /

4

Plaintiff states that he gathered two signed statements from inmates who witnessed the incident occur and who are willing to testify in court. See id. at 7-9. Plaintiff alleges that he filed a staff complaint to "calm himself for he knew this was done to threaten and intimidate, and it did." See id. at 7.  Plaintiff adds that he talked with a clinician because the incident left him unable to sleep because it bothered him deeply. See id.

Claim III

In his third claim, Plaintiff states that Defendant Pendleton and Defendant Ramos failed to write a report after being present when Defendant Silinovich told Plaintiff to "Shut up and step the fuck off". See id. at 10. Plaintiff alleges that they did not write a report to cover up the incident, "acting under a code of silence." See id. Plaintiff also alleges that they lied to the investigators to further cover it up. See id. Plaintiff adds that this caused Defendant Holmes to stop the investigation. See id.

## II.  DISCUSSION

The Court finds that Plaintiff's complaint currently states at least one cognizable claim against Defendant Pendleton and Defendant Miller. Plaintiff's complaint otherwise suffers from a number of defects. The Court's findings are discussed in more detail below.

### A.    **Pleading Sufficient Facts**

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations.  See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional

1   deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

2          Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

3   of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

4   notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly,

5   550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order

6   to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic

7   recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to

8   raise a right to relief above the speculative level." Id. at 555-56.  The complaint must contain

9   "enough facts to state a claim to relief that is plausible on its face." Id.  at 570.  "A claim has

10  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

11  reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at

12  1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

13  than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S.

14  at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,

15  it 'stops short of the line between possibility and plausibility for entitlement to relief." Id.

16  (quoting Twombly, 550 U.S. at 557).

17         In this case, Plaintiff lists seven defendants for which he provides no facts linking

18  them to a constitutional violation. These defendants include Candace Clevenger, the Principal;

19  Davis, the Vice Principal; John Doe, the Welding Supervisor; F. Carrillo, a Chaplain; B. Holmes,

20  Chief Deputy Warden; John Doe, a Kitchen Officer; and John Doe, a Yard Crew Officer. Plaintiff

21  violates Rule 8(a)(2) by not providing any factual allegations in his complaint to give these

22  defendants fair notice of the grounds upon which his claim rests. Plaintiff must allege specific

23  facts as to how each named Defendant is involved as to each alleged wrongdoing, how the

24  conditions complained of have resulted in a deprivation of his constitutional rights, and set forth

25  some link or connection between each Defendant and the claimed deprivation. Plaintiff will be

26  provided an opportunity to amend.

27  / / /

28  / / /

1

**B.**     **First Amendment Claim for Retaliation**

2               In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must

3 establish that he was retaliated against for exercising a constitutional right, and that the retaliatory

4 action was not related to a legitimate penological purpose, such as preserving institutional

5 security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting

6 this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the

7 exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995);

8 Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also

9 show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by

10 the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also

11 Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must

12 establish the following in order to state a claim for retaliation: (1) prison officials took adverse

13 action against the inmate; (2) the adverse action was taken because the inmate engaged in

14 protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the

15 adverse action did not serve a legitimate penological purpose.  See Rhodes, 408 F.3d at 568.

16               Supervisory personnel are generally not liable under § 1983 for the actions of their

17 employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

18 respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

19 violations of subordinates if the supervisor participated in or directed the violations.  See id.  The

20 Supreme Court has rejected the notion that a supervisory defendant can be liable based on

21 knowledge and acquiescence in a subordinate's unconstitutional conduct because government

22 officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct

23 and not the conduct of others.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Supervisory

24 personnel who implement a policy so deficient that the policy itself is a repudiation of

25 constitutional rights and the moving force behind a constitutional violation may, however, be

26 liable even where such personnel do not overtly participate in the offensive act.  See Redman v.

27 Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

28 / / /

7

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

With respect to Claim I, alleging retaliation for exercising his First Amendment right to file grievances, Plaintiff listed in his complaint twelve defendants, as well as Defendant Covello, whom he believes took part in the alleged retaliation. However, as discussed above, Plaintiff has failed to provide sufficient facts to satisfy Rule 8 with respect to Candace Clevenger, the Principal; Davis, the Vice Principal; John Doe, the Welding Supervisor; F. Carrillo, a Chaplain; John Doe, a Kitchen Officer; and John Doe, a Yard Crew Officer. Thus, this section will focus on the defendants for which facts were provided. These Defendants include (1) Ramos, a Correctional Officer; (2) Patrick Covello, the Warden; (3) K. Rogers, the B. Facility Captain; (4) Alvis, the Assignment Lieutenant; (5) T. Kirby, the Correctional Sergeant; (6) Pendleton, a Correctional Officer; (7) Miller, a Correctional Officer.

### 1.    Ramos, a Correctional Officer

As to Defendant Ramos, Plaintiff includes Defendant Ramos in his initial list of Defendants taking part in retaliation against him but does not mention Defendant Ramos again with respect to that claim. Vague and conclusory allegations are not enough to state a claim for relief against a defendant. Plaintiff must allege specific facts as to how each named Defendant is involved as to each alleged wrongdoing, how the conditions complained of have resulted in a deprivation of his constitutional rights and set forth some link or connection between each Defendant and the claimed deprivation. Plaintiff will be granted leave to amend.

/ / /

/ / /

/ / /

8

1                   2.      <u>Patrick Covello, the Warden</u>

2               As to Defendant Covello, Plaintiff's complaint is deficient. Plaintiff alleges that

3 Defendant Covello was made aware that Plaintiff had not been granted a job "through 22 Forms

4 and grievances and failed to do anything, allowing [Plaintiff] to continue suffering irreparable

5 harm." <u>See</u> ECF No. 1, pg. 6. Plaintiff also states that he "even filed a Writ of Habeus and

6 Defendant Covello refused to remedy the problem." <u>See id.</u> These allegations fail to causally link

7 Defendant Covello to the retaliation Plaintiff is alleging. As discussed above, there are four

8 elements which must be satisfied by a Defendant in order to be held liable for retaliation. It is

9 impossible for the Court to conduct the screening required by law when the allegations are vague

10 and conclusory and these facts fail to show that Defendant Covello took adverse action against

11 Plaintiff due to Plaintiff's protected conduct. To the extent that Plaintiff's claims against

12 Defendant Covello are based on a theory of supervisor liability, this does not provide proper basis

13 for a claim, as stated above. Plaintiff will be provided an opportunity to amend his allegations as

14 to the actual involvement, if any, of Defendant Covello in a claimed constitutional violation.

15                   3.      <u>K. Rogers, the B Facility Captain</u>

16               As to Defendant K. Rogers, Plaintiff fails to state a claim upon which relief can be

17 granted. Plaintiff alleges that while meeting with Defendant K. Rogers, Plaintiff informed him

18 that there was a conspiracy to deny Plaintiff the ability to work or get a GED. <u>See id.</u> Plaintiff

19 adds that he also told Defendant K. Rogers about his conversation with Defendant Pendleton who

20 told Plaintiff he was not to be assigned a job because he had filed grievances. <u>See id.</u> Plaintiff

21 further alleges that Defendant K. Rogers told Plaintiff that this was not true and told Defendant

22 Kirby to get Plaintiff a job. <u>See id.</u> Plaintiff also states that eighteen months later, he still was not

23 assigned a job. <u>See id.</u>

24               Plaintiff does not state facts sufficient to show that Defendant K. Rogers took any

25 adverse action against Plaintiff. Rather, Plaintiff's allegations evidence Defendant K. Rogers

26 directing Defendant T. Kirby to fix the problem by getting Plaintiff a job. Because Defendant K.

27 Rogers cannot be held liable on a respondeat superior theory for Defendant T. Kirby's failure to

28 get Plaintiff a job, this allegation is insufficient to state a claim. Plaintiff must allege the actual

1   personal involvement of Defendant K. Rogers as to each alleged wrongdoing. Plaintiff will be

2   provided an opportunity to amend.

3                       4.      Alvis, the Assignment Lieutenant

4           As to Defendant Alvis, Plaintiff states that Defendant Pendleton informed Plaintiff

5   that she had a meeting with the Lieutenant who showed her numerous grievances that Plaintiff

6   had filed and told Defendant Pendleton that Plaintiff could not get a job. See id. at 5. These

7   claims taken as true, would make Lieutenant liable for personally directing a subordinate to

8   engage in the constitutional violation of retaliation against Plaintiff, without a legitimate

9   penological purpose, due to Plaintiff's protected conduct of filing grievances. However, from

10  Plaintiff's complaint it is unclear whether it was Defendant Alvis, the Assignment Lieutenant, or

11  another Lieutenant who directed Defendant Pendleton to retaliate.

12          As pleaded, the facts are undistinguishable as to who directed Defendant

13  Pendleton to engage in the adverse action of denying Plaintiff a job, due to his protected conduct

14  of filing grievances. Plaintiff merely states that it was a Lieutenant and has listed Defendant Alvis

15  as the sole Defendant who is a Lieutenant, but also mentions Lieutenant Banks in his allegations;[5]

16  as such it is impossible for the Court to conduct the screening required by law when the

17  allegations are vague and conclusory, or unclear as to which Defendant engaged in what

18  misconduct. Plaintiff will be granted leave to amend to clarify which Defendant Plaintiff is

19  alleging engaged in the purported misconduct.  Plaintiff must allege specific facts as to how each

20  named Defendant is involved as to each alleged wrongdoing, how the conditions complained of

21  have resulted in a deprivation of his constitutional rights and set forth some link or connection

22  between each Defendant and the claimed deprivation.

23                      5.      T. Kirby, the Correctional Sergeant

24          As to Defendant Kirby, Plaintiff alleges in Claim I that Defendant Rogers told

25  Defendant Kirby to get Plaintiff a job, preferably on recycling. See id. at 6. Plaintiff also alleges

26  that after eighteen months he has still not been given an assignment. See id. With respect to

27  Defendant Kirby, Plaintiff's complaint is deficient. For Defendant Kirby to be liable for

28  _____

    [5]        Lieutenant Banks is not a named Defendant.

                                        10

retaliation against Plaintiff in violation of his constitutional rights, specific facts must be alleged to show that Defendant Kirby took adverse action against Plaintiff because Plaintiff engaged in protected conduct. Here, Plaintiff's complaint is deficient because it fails to provide facts sufficient to allege any reasoning for Defendant Kirby not getting Plaintiff a job after being told to do so by Defendant Rogers. Plaintiff will be provided an opportunity to amend.

### 6.    Pendleton, a Correctional Officer

As to Defendant Pendleton, Plaintiff sufficiently alleges that Defendant Pendleton took adverse action in response to Plaintiff's protected conduct by telling Defendant Miller that Plaintiff could not get a job because he is an Inmate Advisory Committee member who has filed multiple grievances. See id. at 5. Plaintiff further states that upon confronting Defendant Pendleton, she informed Plaintiff that she had a meeting with the Lieutenant who showed her numerous grievances that Plaintiff had filed and told Defendant Pendleton that Plaintiff could not get a job. See id. Plaintiff engaged in protected conduct by filing grievances as this is "[t]he most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison grievances and to pursue civil rights litigation in the courts." Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017). In these allegations, Plaintiff states a connection between his protected conduct of filing multiple grievances, and adverse actions taken in response to this right. Based on the alleged facts there does not seem to be any other legitimate penological purpose for Defendant Pendleton to take these adverse actions against the Plaintiff. For the above allegations, the Court finds Plaintiff sufficiently stated more than minimal harms.  Consequently, Plaintiff has stated a claim against Pendleton for retaliation protected by the First Amendment.

### 7.    Miller, a Correctional Officer

As to Defendant Miller, Plaintiff sufficiently alleges that Defendant Miller took adverse action in response to Plaintiff's protected conduct by not getting Plaintiff a job and informing Plaintiff that Defendant Miller had been told by Defendant Pendleton that Plaintiff could not get a job because he is an Inmate Advisory Committee member who has filed multiple grievances. See ECF No. 1, pg. 6. Similar to the discussion above regarding Defendant Pendleton's liability, in these allegations Plaintiff states a connection between his protected

conduct of filing multiple grievances, and adverse actions taken in response to this right. Based on the alleged facts there does not seem to be any other legitimate penological purpose for Defendant Pendleton to take these adverse actions against the Plaintiff.  For the above allegations, the Court finds Plaintiff sufficiently stated more than minimal harms.  Consequently, Plaintiff has stated a claim against Miller for retaliation protected by the First Amendment.

### C.    Eighth Amendment Claim for Personal Safety and Verbal Harassment

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.   See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833.  Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk.  See Farmer, 511 U.S. at 837.  The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk.  See Farmer, 511

1   U.S. at 844.  The knowledge element does not require that the plaintiff prove that prison officials

2   know for a certainty that the inmate's safety is in danger, but it requires proof of more than a

3   mere suspicion of danger.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).  Finally, the

4   plaintiff must show that prison officials disregarded a risk.  Thus, where prison officials actually

5   knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk,

6   even if harm ultimately was not averted.  See Farmer, 511 U.S. at 844.

7          Here, Plaintiff fails to allege sufficient facts to substantiate a claim for the

8   violation of his personal safety because "words alone are generally not sufficient to state an

9   Eighth Amendment claim under section 1983." Joseph v. Parciasepe, No. 2:14-CV-00414 AC P,

10   2014 WL 2807654, at *3 (E.D. Cal. June 20, 2014). Plaintiff claims that Defendant Silinovich

11   caused Plaintiff to fear for his safety by telling him three times to, "Shut up and step the fuck off."

12   See ECF No. 1, pg. 7. This allegation fails to satisfy both the objective and subjective

13   requirements of an Eighth Amendment claim for the violation of personal safety. While Plaintiff

14   claims that Defendant Silinovich's actions resulted in Plaintiff experiencing sleep deprivation, the

15   alleged facts fail to establish that there was an objective risk of serious harm to the Plaintiff or

16   that Defendant Silinovich subjectively knew of and disregarded a risk to Plaintiff's personal

17   safety. See id. Plaintiff will be provided an opportunity to amend.

18          To the extent that Plaintiff is claiming harassment, that claim too must fail.

19   Allegations of verbal harassment generally do not state a claim under the Eighth Amendment.

20   See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  However, "[v]erbal harassment

21   may violate the Constitution when it is 'unusually gross even for a prison setting and [is]

22   calculated to and [does] cause [plaintiff] psychological damage.'" Cox v. Kernan, 2019 WL

23   6840136, *5 (E.D. Cal. Dec. 16, 2019) (quoting Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir.

24   1996)).  Allegations of name-calling, verbal abuse, or threats generally are also not unusually

25   gross for a prison setting.  See Carpenter v. Molina, 2021 WL 2226635, at *3 (E.D. Cal. June 2,

26   2021).  Thus, a defendant's threats to kill or harm a plaintiff are insufficient, without more, to

27   give rise to a cognizable verbal harassment claim.  See Bailey v. Soto, 2019 WL 4452970, at

28   *7-9 (C.D. Cal. July 10, 2019).  Here, Plaintiff fails to allege facts sufficient to satisfy both the

objective and subjective requirement of an Eighth Amendment claim for the same reasons as discussed above. Additionally, Defendant Silinovich's words are not unusually gross for a prison setting; thus, failing to satisfy the standard required to give rise to an Eighth Amendment claim for verbal harassment without more.

### D.     Fourteenth Amendment Claim for Due Process Violation

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought.  See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property.  See Bd. of Regents, 408 U.S. at 577.  Protected property interests are created, and their dimensions are defined, by existing rules that stem from an independent source – such as state law – and which secure certain benefits and support claims of entitlement to those benefits.  See id.

Liberty interests can arise both from the Constitution and from state law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993).  In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose."  Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405.  Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

/ / /

/ / /

/ / /

14

1      In determining whether state law confers a liberty interest, the Supreme Court has

2   adopted an approach in which the existence of a liberty interest is determined by focusing on the

3   nature of the deprivation.  See Sandin v. Connor, 515 U.S. 472, 481-84 (1995).  In doing so, the

4   Court has held that state law creates a liberty interest deserving of protection only where the

5   deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the

6   sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the

7   ordinary incidents of prison life."  Id. at 483-84.  Prisoners in California have a liberty interest in

8   the procedures used in prison disciplinary hearings where a successful claim would not

9   necessarily shorten the prisoner's sentence.  See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th

10   Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not

11   result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v.

12   Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate

13   release from prison were cognizable under § 1983).

14      Where a prisoner alleges the deprivation of a liberty or property interest caused by

15   the random and unauthorized action of a prison official, there is no claim cognizable under 42

16   U.S.C. § 1983 if the state provides an adequate post-deprivation remedy.  See Zinermon v. Burch,

17   494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984).  A state's post-

18   deprivation remedy may be adequate even though it does not provide relief identical to that

19   available under § 1983.  See Hudson, 468 U.S. at 531 n.11.  A due process claim is not barred,

20   however, where the deprivation is foreseeable and the state can therefore be reasonably expected

21   to make pre-deprivation process available.  See Zinermon, 494 U.S. at 136-39.  An available

22   state common law tort claim procedure to recover the value of property is an adequate remedy.

23   See id. at 128-29.

24      Plaintiff's allegations that Defendant Pendleton and Defendant Ramos lied to

25   Defendant Holmes and failed to report Defendant Silinovich's conduct to cover up the situation

26   are conclusory and unsupported.  Plaintiff alleges that they lied to the investigators to further

27   cover up the situation, which caused Defendant Holmes to stop the investigation, but does not

28   explain what false statements were made or when such statements were alleged to have occurred.

15

1  See ECF No. 1, pg. 10. Furthermore, "the failure to report or document alleged wrongful actions

2  does not state a cognizable civil rights claim. Violations of state prison rules and regulations,

3  without more, do not support any claims under section 1983." Hill v. Kernan, No. 2:16-CV-3020

4  KJN P, 2017 WL 2619128, at *5 (E.D. Cal. June 16, 2017); See also Ove v. Gwinn, 264 F.3d

5  817, 824 (9th Cir. 2001); Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997).

6  Additionally, the facts fail to state the property or liberty interest, which Plaintiff is being

7  deprived of based on these defendants conduct. Plaintiff must allege specific facts as to how each

8  named Defendant is involved in each alleged wrongdoing, how the conditions complained of

9  have resulted in a deprivation of his constitutional rights, and set forth some link or connection

10  between each Defendant and the claimed deprivation. Plaintiff will be granted leave to amend.

11

12                      **III.  CONCLUSION**

13            Because it is possible that the deficiencies identified in this order may be cured by

14  amending the complaint, Plaintiff is entitled to leave to amend.  See Lopez v. Smith, 203 F.3d

15  1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an

16  amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258,

17  1262 (9th Cir. 1992).  Therefore, if Plaintiff amends the complaint, the Court cannot refer to the

18  prior pleading in order to make Plaintiff's amended complaint complete.  See Local Rule 220.  An

19  amended complaint must be complete in itself without reference to any prior pleading.  See id.

20            If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the

21  conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See

22  Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how

23  each named defendant is involved, and must set forth some affirmative link or connection

24  between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d

25  164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

26  / / /

27  / / /

28  / / /

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated:  July 24, 2023

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE